BETHANY MEDICAL
CENTER, Plaintiff,

v.

Dr. Robert C. HARDER, Secretary of Kansas Department of Social and Rehabilitation Services, Defendant & Third-Party Plaintiff,

v.

DEPARTMENT OF HEALTH AND HUMAN SERVICES and Otis R. Bowen, Secretary of Health & Human Services, Third-Party Defendants.

No. 85–2415.

United States District Court,
D. Kansas.

June 30, 1986.

---

Mary Beth Blake, Reid F. Holbrook, Holbrook & Ellis, P.A., Kansas City, Kan., for plaintiff.

Matthew W. Boddington, Legal Div., State Dept. of Social and Rehabilitation Services, Topeka, Kan., for Harder.

Benjamin L. Burgess, Jr., U.S. Atty., Robert A. Olsen, Asst. U.S. Atty., Kansas City, Kan., Kristi A. Schmidt, Dept. of Health & Human Services, Kansas City, Mo., for Health & Human Services and Heckler.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, Chief Judge.

This matter is presently before the court on the third-party defendants' motion to dismiss the third-party complaint for failure to state a claim upon which relief may be granted. For the reasons discussed below, the third-party complaint will be dismissed.

This is an action for declaratory and injunctive relief, in which plaintiff Bethany Medical Center seeks to prevent defendant Dr. Robert C. Harder, Secretary of The Department of Social and Rehabilitation Services [SRS] from continuing to enforce certain policies of the SRS that plaintiff contends do not comply with the federal Medicaid law, 42 U.S.C. §§ 1396 *et seq.* Plaintiff challenges SRS' determination of its rate of reimbursement for services provided to Medicaid recipients and SRS' failure to consider Bethany Medical Center as a provider that serves a disproportionate number of low income patients with special needs. Harder has filed a third-party complaint against the Department of Health and Human Services [HHS] and the Secretary of HHS [the Secretary], claiming that if this court grants plaintiff relief, the third-party defendants should be held liable to defendant for their percentage share of

federal funding under the Medicaid Program.

## I. *Background Law on the Medicaid Program.*

In order to understand the issues raised in this case, we must look to the Medicaid Act. That Act, found at 42 U.S.C. §§ 1396 *et seq.*, is a cooperative federal-state endeavor to provide medical assistance to poor persons. States are not required to institute a Medicaid program, but if they choose to do so, they must devise a satisfactory "state plan" that fulfills all the requirements of the Act and must submit the plan to the Secretary for approval. *See generally* 42 U.S.C. § 1396a. After the Secretary determines that the plan meets all the requirements of the statute and implementing regulations, *see* 42 U.S.C. § 1396a(b), the state is eligible for a federal grant. The state will be reimbursed with federal funds for a portion of the expenditures that it makes in providing specific types of medical assistance to eligible individuals under the plan. *See* 42 U.S.C. § 1396b, 45 C.F.R. § 201.5.

A state plan providing for reimbursement to its hospitals for services provided to Medicaid recipients must meet the standards set forth at 42 U.S.C. § 1396a(a)(13)(A). This statute requires that a state plan for medical assistance provide:

for payment ... of the hospital, skilled nursing facility, and intermediate care facility services provided under the plan through the use of rates (determined in accordance with methods and standards developed by the State) and which, in the case of hospitals, take into account the situation of hospitals which serve a disproportionate number of low income patients with special needs and provide, in the case of hospital patients receiving services at an inappropriate level of care ... for lower reimbursement rates reflecting the level of care actually received ... which the State finds, and makes assurances satisfactory to the Secretary, are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities in order to provide care and services in conformity with applicable State and Federal laws, regulations, and quality and safety standards and to assure that individuals eligible for medical assistance have reasonable access (taking into account geographic location and reasonable travel time) to inpatient hospital services of adequate quality; and such State makes further assurances, satisfactory to the Secretary, for the filing of uniform cost reports by each hospital, skilled nursing facility, and intermediate care facility and periodic audits by the State of such reports.

42 U.S.C. § 1396a(a)(13)(A).

A state must also receive HHS approval of a significant change in its state plan and must make certain assurances to the HHS. *See* 42 C.F.R. §§ 447.253(a) and 447.255. One of the items of information that the state must provide is that the methods and standards used to determine payment rates take into account hospitals that serve a disproportionate number of low income patients with special needs. 42 C.F.R. § 447.-253(b)(1)(ii)(A). The state must also provide an estimate of the effect the change in the rates will have on hospitals serving a disproportionate number of low income patients. 42 C.F.R. § 447.255(b)(4).

## II. *Facts.*

The facts relevant to resolution of this motion are as follows. SRS is the agency of the state of Kansas that develops and implements the Kansas Medicaid Plan. The agency determines the amount of reimbursement given to health care providers who provide services to eligible persons within the meaning of the Medicaid Act. On September 21, 1983, SRS submitted to HHS the information and assurances required under 42 U.S.C. § 1396a(a)(13)(A) and the federal regulations concerning a Kansas State Plan Amendment for payment of inpatient hospital services. One of the assurances SRS made was that there were no Kansas hospitals serving a dispro-

portionate number of low income patients with special needs. HHS reviewed this material in accordance with 42 C.F.R. § 447.-250. On January 30, 1984, HHS accepted the state's assurances and approved the plan. The plan sets a certain per diem rate of reimbursement for health care providers serving Medicaid patients. The plan also provides that HHS pay fifty percent of these reimbursement costs, while SRS pays the remaining fifty percent.

## III. *Relief Sought.*

Plaintiff Bethany Medical Center claims that it serves a disproportionate number of low income patients with special needs. Consequently, plaintiff seeks a declaratory judgment that Harder's assurance that there are no Kansas hospitals serving a disproportionate number of low income patients with special needs is without factual support, is arbitrary and capricious and therefore in violation of 42 U.S.C. § 1396a(a)(13)(A). Plaintiff also seeks an injunction requiring defendant to prepare a revised plan that addresses the needs of hospitals that serve a disproportionate number of low income patients with special needs and that provides additional compensation for hospitals in that classification. Further, plaintiff seeks an injunction requiring Harder to make such additional compensation part of plaintiff's reimbursement rate. Plaintiff is not seeking monetary damages or any retroactive monetary relief. Plaintiff also seeks a preliminary injunction to prevent the deprivation of compensation for services rendered to the disproportionate number of low income patients that it serves for the period of time that it takes to complete this lawsuit.

Harder's third-party complaint against HHS and the Secretary of HHS claims that, should plaintiff prevail in this case, HHS and the Secretary may be liable to Harder for their percentage of federal funding participation.

## IV. *Analysis.*

■ Federal Rule of Civil Procedure 14(a) provides that a defending party may serve a third-party complaint against a person not a party to the action "who is or may be liable to him for all or part of the plaintiff's claim against him." A third-party claim may be asserted under this rule only when the third party's liability is in some way dependent on the outcome of the main claim or when the third party is secondarily liable to the defendant. 6 Wright and Miller, *Federal Practice and Procedure* § 1446 at 246 (1971). The original defendant's claim against a third-party defendant cannot simply be a related claim or one arising against the same general background, but must be based on the plaintiff's claim of liability against the original defendant. *Id.* at 257. *See also United States Fidelity & Guaranty Co. v. American State Bank*, 372 F.2d 449, 450 (10th Cir.1967). The granting or denial of leave to a defendant to prosecute a third-party claim rests in the trial court's sound discretion. *United States v. Acord*, 209 F.2d 709, 714 (10th Cir.), *cert. denied*, 347 U.S. 975, 74 S.Ct. 786, 98 L.Ed. 1115 (1954).

The Secretary argues that the third-party complaint must be dismissed because neither he nor HHS will be liable to the state for any federal financial participation if the court grants plaintiff's requested relief. If the court orders such relief, SRS must thereafter develop methods and standards for determining the payment rate to Kansas hospitals, taking into account that plaintiff serves a disproportionate number of low income patients with special needs. (As the Secretary correctly notes, plaintiff has not requested that we determine the standard or method of payment or the actual amount to be paid to plaintiff; these determinations must be made by SRS.) SRS must then submit a state plan amendment, including the necessary standards and methods of payment and assurances required by 42 U.S.C. § 1396a and the implementing regulations. Upon submission of this material, HHS will determine whether the state plan amendment should be approved. If approved, the state then becomes entitled to federal financial participation. HHS may not be held liable for

federal funding until SRS submits these assurances and an approvable state plan amendment. Accordingly, the third-party defendants argue that they are not liable to SRS based on plaintiff's claims in this case, and there is no basis for prosecuting a third-party complaint against them.

We agree with the third-party defendants that they will not be liable for federal financial participation simply by virtue of a judgment in favor of plaintiff. The primary issue in this case is between plaintiff and SRS, and concerns whether the assurance given to HHS by SRS that no Kansas hospitals (including plaintiff) serve a disproportionate number of low income patients with special needs is legally supportable.

As discussed above, the federal law and regulations require the state to give such an assurance to HHS when seeking to amend their state plan. Unlike the former statute, section 249 of Pub.L. No. 92–603, which required HHS to "approve and verify" the reimbursement methods and standards utilized by the state, the current law provides only that the state submit "satisfactory assurances" to the HHS that its rates are adequate and reasonable. The Secretary is no longer required to probe beyond the data submitted by the states to the underlying ratesetting methodology. *Coalition of Michigan Nursing Homes, Inc. v. Dempsey*, 537 F.Supp. 451, 459 (E.D.Mich.1982). The Senate Budget Committee commented upon this change in the statute, stating as follows:

> The Congress expects that the Secretary will keep regulatory and other requirements to that minimum necessary to assure proper accountability, and not to overburden the States and facilities with marginal but massive paperwork requirements. It is expected that the assurance made by the States will be considered satisfactory in the absence of a formal finding to the contrary by the Secretary.

126 Cong.Reg. S8257 (Daily Ed. June 26, 1980).

■ Under this statutory framework, we believe it is clear that Congress intended each state to develop its own methods and standards for making rate determinations. Harder concedes that the Secretary has not defined the term "disproportionate numbers of low income persons with special needs" and that these determinations are to be left up to the individual states. Harder's Response at 7–8. Nevertheless, Harder contends that the Secretary and HHS should be included as third-party defendants in this action in order to insure that any new plan ordered by this court meets the federal mandates. He argues that conceivably, if the court finds in favor of plaintiff, he could be ordered to prepare a new plan and to submit it to plaintiff and the court, only to learn that HHS disapproves of the plan.

■ The court finds, however, that there is nothing in this case that would prevent HHS from approving an amended state plan and consequently contributing its federal funding. As long as Harder complies with the procedural requirements of 42 U.S.C. § 1396a(a)(13)(A) and its implementing regulations, HHS will approve the plan, as it approved the latest plan amendment in 1984.

In light of the foregoing, we hold that Harder's third-party complaint against the Secretary and HHS must be dismissed. Harder has failed to establish that the third-party defendants are or may be liable to him for all or part of plaintiff's claim against him.

IT IS THEREFORE ORDERED that the third-party complaint against the Department of Health and Human Services and the Secretary of Health and Human Services is dismissed.